**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**William Vernon PEIFER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 9, 1998.

Filed April 9, 1999.

---

miss the criminal charges against him. We affirm.

¶2 Peifer was charged in Bedford County with multiple counts of indecent assault, aggravated indecent assault, involuntary deviate sexual intercourse, sexual assault, rape, incest, statutory rape, harassment and stalking, and corruption of minors. The charges stemmed from various acts appellant forced on his granddaughter from November 1994 to July 1996.

¶3 Peifer also faced charges for crimes against his granddaughter in Cambria and Somerset Counties. On August 25, 1997, Peifer pled *nolo contendere* to indecent assault in Cambria County for an offense committed in May 1996. On October 8, 1997, he pled guilty in Somerset County to two counts of indecent assault and one count of corruption of minors; these crimes occurred between November 1994 and June 1995.

¶4 On August 27, 1997, the district attorney's office filed a motion to consolidate the charges pending in Bedford County. On September 8, 1997, Peifer filed an omnibus pre-trial motion seeking dismissal of those charges with prejudice, under 18 Pa.C.S. Section 110, *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997), *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755 (1995), *rehearing denied* (July 19, 1995), and *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983). Peifer maintained the charges to which he already pled in Cambria County involved the same conduct, and were logically and temporally related to the conduct which formed the basis for the Bedford County charges; claiming prejudice from multiple prosecutions, Peifer wanted the proceedings in Bedford County dismissed. In the alternative, he requested severance of the charges for purposes of trial.

¶5 After hearing and argument, the trial court denied Peifer's motion to dismiss, and this appeal followed. Peifer frames his issues as follows:

Douglas R. Goldbar, Everett, for appellant.

Thomas S. Ling, District Attorney, Bedford, for Commonwealth, appellee.

Before EAKIN, J., ORIE MELVIN, J. and CERCONE, President Judge Emeritus.

EAKIN, J.:

¶1 William Vernon Peifer appeals from the order denying his motion to dis-

1. Do 18 Pa.C.S.A. § 110 and *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997), create a rule of compulsory joinder of criminal indictments or informations, filed in different counties, in situations where a number of charges are logically and/or temporally related and share common issues of law and fact?

2. If a rule of compulsory joinder is in fact created, does the responsibility to consolidate all the offenses from the single criminal episode rest upon the Commonwealth?[1]

¶ 6 In determining if cases are barred by Section 110, or the double jeopardy provisions of the constitutions of the United States or Pennsylvania, our scope of review is plenary. *Commonwealth v. Hockenbury*, 549 Pa. 527, 701 A.2d 1334, 1336, n. 3 (1997); *Commonwealth v. Mattis*, 454 Pa.Super. 605, 686 A.2d 408, 410 (1996), *appeal denied*, 547 Pa. 752, 692 A.2d 564 (1997).

¶ 7 The Commonwealth asserts the appeal should be dismissed as interlocutory. We must disagree. Although the denial of Peifer's motion to dismiss is not a final order, the Pennsylvania Supreme Court has held we may properly consider such an appeal:

> [B]ecause 18 Pa.C.S. Section 110 statutorily extends Federal and Pennsylvania constitutional protections against double jeopardy and embodies the same basic purposes as those underlying the double jeopardy clauses, the interlocutory appealability of double jeopardy claims has been applied to claims based on Section 110.

*Bracalielly*, at 759–60 (citing *Commonwealth v. Dozier*, 333 Pa.Super. 188, 482 A.2d 236, 238 (1984) and *Commonwealth v. Fields*, 491 Pa. 609, 421 A.2d 1051, 1052 n. 1 (1980)). *See also Commonwealth v. Anthony*, 553 Pa. 55, 717 A.2d 1015 (1998)(denial of a motion to dismiss based on compulsory joinder/double jeopardy grounds is subject to appellate review unless it appears the claim is frivolous).

¶ 8 18 Pa.C.S. Section 110 sets forth a rule of compulsory joinder:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title ... and the subsequent prosecution is for: ...

> (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense;

18 Pa.C.S. § 110(1)(ii).

Thus, Section 110(1)(ii) essentially contains four requirements:

(1) the former prosecution must have resulted in an acquittal or a conviction;

(2) the instant prosecution is based on the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the instant charges and the former charges were within the jurisdiction of a single court.

---

1. The trial court found Peifer's failure to request consolidation constituted a waiver of any Section 110 rights. Peifer's second issue arises from this finding; in light of our disposition, we will not address it.

*Anthony*, at 1018; *Bracalielly*, at 760. We are guided by these policy goals:

(1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and

(2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

*Hude*, at 180. "By requiring compulsory joinder of all charges arising from ... [the same criminal episode], a defendant need only once 'run the gauntlet' and confront the awesome resources of the state." *Id.* With respect to the factors relevant to a determination of "same criminal episode," the Supreme Court framed the standard as follows:

[W]here a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of scarce judicial resources. In such cases, failure to consolidate will bar successive prosecutions.

*Id.*, at 183.

■ ¶ 9 The first of Section 110's requirements is easily met, as both former prosecutions resulted in conviction. Appellant pled *nolo contendere* to the Cambria County charge before filing this motion, and pled guilty to the Somerset County charges before his motion was resolved. For purposes of Section 110, a guilty plea is tantamount to a conviction. *Anthony*, at 1018; *Bracalielly*, at 760. The *nolo contendere* plea has the same effect. *Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714, 717 (1995), *appeal denied*, 544 Pa. 605, 674 A.2d 1069 (1996); *Commonwealth v. Thomas*, 351 Pa.Super. 423, 506 A.2d 420, 422 (1986).

■ ¶ 10 With respect to the fourth requirement, *McPhail* held "there is no constitutional deprivation occasioned by joining all charges stemming from a single criminal episode for trial in one county despite the fact that some of the charges arose in a different county." *Id.*, at 145. Under the precedent of *McPhail*, charges in all three counties were within the jurisdiction of a single court, if the crimes involved a single episode.

■ ¶ 11 In evaluating the second element of Section 110, the learned trial court found the charges in Cambria and Bedford Counties arose from the same criminal episode. Although we cannot agree with this finding,[2] our review shows other factors confirm the court's result.

■ ¶ 12 Before addressing these factors, we are compelled to admonish counsel, as transcripts of Peifer's pleas in Cambria and Somerset Counties were not included in the record for this appeal. This Court was forced to pursue these transcripts once it became clear the record provided was inadequate for a meaningful review.[3] Not only are the official court transcripts of Peifer's prior pleas plainly relevant to the issue before this Court,

---

**2.** That which will be treated as a single criminal episode was expanded in *McPhail*; four drug transactions over two days in two counties were held to be a single episode. Even under this widened concept, a single episode does not extend to twenty months of crime. We also doubt the Supreme Court would have deemed it a single episode if McPhail's crimes were sexual assault rather than drug sales. Appellant's assaults on his grandchild comprised a career, not an "episode".

**3.** It is the responsibility of appellant, not this Court, to provide a complete record for review, including ensuring that any necessary transcripts are included in the official record. *Commonwealth v. Muntz*, 428 Pa.Super. 99, 630 A.2d 51, 55 (1993). *See also* Pa.R.A.P. 1911, 1921–23; *Commonwealth v. Presbury*, 445 Pa.Super. 362, 665 A.2d 825, 832–33 (1995), *appeal denied*, 544 Pa. 627, 675 A.2d 1246 (1996)(meaningful review is precluded where transcripts are unavailable, even though both the Commonwealth and appellant cite to the missing transcripts). Failure to provide the necessary materials warrants a finding appellant's claim is waived. *Muntz*, at 55.

they are crucial to its determination, as the discussions in those proceedings directly affect Peifer's Section 110 claim. Rather than dismiss the appeal, we have undertaken appellant's duty for him; in doing so, we discover why he would rather we resolve the case on an incomplete record.

¶ 13    The official transcript of the Cambria County plea shows the prosecutor was not aware of the scope of the Bedford County charges when Peifer entered his plea August 25, 1997; he appeared to believe the Bedford County charges stemmed from one incident around Thanksgiving 1994. That transcript also shows the prosecuting attorney, David Kaltenbaugh, and Peifer's own counsel, Patricia Moore, agreed the charges in that county were separate and unrelated to the Bedford County charges:

> ATTORNEY KALTENBAUGH: There is one additional matter that I would put on the record. That is that there are unrelated charges in Bedford County. And pursuant to a request from the defense attorney, I contacted Mr. Ling, the District Attorney of Bedford County. He indicated that he would not use the plea and conviction in this case is [sic] his case in chief in Bedford County. The charges in Bedford County took place on or about Thanksgiving of 1994. The events in this case took place in May of 1996.
>
> THE COURT: This took after that?
>
> ATTORNEY KALTENBAUGH: Yes.
>
> THE COURT: They are not going to be able to use this conviction in his trial or plea up there; is that correct?
>
> ATTORNEY KALTENBAUGH: He wrote me a letter. I wanted to ask one question or two questions. Mr. Peifer, without admitting the truth of the averments against you in these charges or in the other charges, these charges that we are here today entering a plea on are subsequent and separate from the charges against you that occurred in Thanksgiving of 1994 in Cambria, Somerset and Bedford County?

> ATTORNEY MOORE: We agree with that, Your Honor.
>
> THE COURT: There is two sets of charges, one around Thanksgiving of 1994. These occurred in '96. They are not related in any way?
>
> ATTORNEY MOORE: Correct, Your Honor.
>
> THE COURT: Is that correct also, sir?
>
> ATTORNEY MOORE: That's correct.
>
> ATTORNEY KALTENBAUGH: They are jurisdictionally unrelated?
>
> ATTORNEY MOORE: We agree with that also.
>
> THE COURT: What we are telling you, sir, is you can't use the plea here as any defense against your charges in the other county. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

N.T. Cambria County Guilty Plea, 8/25/97, at 3–5.

¶ 14    The Somerset County transcript is particularly significant. There, while the present motion was pending, Peifer pled guilty to indecent assault and corruption of a minor. The transcript shows the court, the prosecutor, Mark Persun, and appellant's counsel, William Carroll, were fully cognizant of the plea in Cambria County, the pending charges in Bedford County, and the *McPhail* ruling. Prior to the plea, the court and counsel painstakingly explained to Peifer the implications of his earlier plea and the other pending charges. The following passages are significant:

> MR. PERSUN: . . . We're dealing here with the same victim in the same period of time in Somerset County as the incident occurred in Cambria County and also he is pending a trial in Bedford County on more numerous cases during the same period of time, same victim.
>
> It was our intention, if Mr. Peifer would not accept the guilty plea, the pleas that we have offered, it was our intention to present a motion to the Court under

*McPhail* and have these three cases transferred to Bedford County.

What has transpired in our reading of the *McPhail* case, what has transpired in Cambria County and what is now going to transpire in Somerset County is that Mr. Peifer is going to waive – or is going to request that these three cases not be tried in conjunction with the cases in Bedford County because that is – under the *McPhail* case, that is the selection of the defendant, but not the option of the Commonwealth; and then upon his making that request, that these cases be handled separately than the Bedford County cases, then we are prepared to move ahead and enter these pleas.

* * *

But I do—I do request the Court to do a colloquy of Mr. Peifer regarding his rights under *Commonwealth v. McPhail.*

N.T. Somerset County Plea, 10/8/97, at 4–6. Peifer's counsel informed the court he had explained to the defendant "very colloquially" his rights under *McPhail.* He further stated:

MR. CARROLL: So the package is Mr. Peifer is not demanding that he enforce any rights by Appellate Decision that all of these cases be consolidated in one county, but the *quid pro quo* for that is that the District Attorney is recommending the sentences on these be concurrent.

* * *

MR. PERSUN: I think for our protection, I think the Court needs to establish that he wants these cases severed first and then we can proceed to the guilty plea. Even though these pleas have been designed based on the fact that we are anticipating him to sever.

If he decides not to sever, we simply transfer these case [sic] to Bedford County and they are tried together with the other cases in Bedford County.

MR. CARROLL: Yes. Attempting to be an effective advocate and not wanting to trigger any claims of ineffectiveness, we felt it necessary to talk about the *McPhail* problem.

I'm not convinced that the *McPhail* problem exists in the sense that he really has an election because of the different timing of some of these events. The *McPhail* case had very, very close proximity and the transactions there basically were drug transactions where you buy and sell in two adjacent counties.

I'm not quite sure the Appellate Court would look upon these events as the same type of transactions. So I'm not as convinced that they are – I'm not convinced that there even is a problem. But I think it ought to be at least addressed so that we can say we go into the plea knowing that we handled it.

N.T. Somerset County Plea, 10/8/97, at 7–9. The court went on to discuss in detail with Peifer the implications of the charges against him in all three counties and his right to consolidation:

THE COURT: ... what I'm trying to tell you, Mr. Peifer, is you do have a right to have all of these cases disposed of at the same time over in Bedford County. You also have a right to disposition of these cases here and those cases over there separately, but you're going to have to tell me that that is what you want to do before I go any further here today.

* * *

THE COURT:—what the point of my asking this question is, Mr. Peifer, is if you go ahead and say Yes, I agree, Judge, I will face these charges here in Somerset; and then when I'm done here, I will go down to Bedford, you can't turn around and go to Bedford and say to Judge Houser, Hey, Judge, they disposed of those cases up here. That

means these have to be thrown out. That won't work if we're doing it the way we're doing it today.

DEFENDANT: I accept.

THE COURT: You accept that limitation.

DEFENDANT: Yes.

THE COURT: We'll note that for the record then that we've attempted to explain to Mr. Peifer along with his attorney's explanation about the *McPhail* decision and it appears that he is willing to essentially agree to have these charges severed from the charges in Bedford County and not to raise the *McPhail* argument in Bedford County.

N.T. Somerset County Plea, 10/8/97, at 11–13.

¶ 15 In Cambria County, the prosecutor and court had limited awareness of all the charges pending elsewhere; undoubtedly appellant knew more than either, but offered nothing to enlighten the court, other than agreeing the Bedford County charges were unrelated. He specifically bargained for the exclusion of the Cambria County plea in the Bedford County trial – such exclusion is directly contrary to the consolidation he now complains has been denied him.

■ ¶ 16 Peifer clearly waived his right to consolidation when he pled guilty in Somerset County, fully aware of the implications of his plea on the charges that remained in Bedford County. The transcript also shows the Somerset County prosecutor intended to move for consolidation of the charges in Somerset and Bedford Counties had Peifer chosen not to plead guilty and waive his Section 110 rights. *See Commonwealth v. Stewart,* 493 Pa. 24, 425 A.2d 346, 349 (1981)(A defendant "may also waive his right to consolidation of all charges arising from the same criminal episode by pleading guilty to some but not all of the charges."); *Commonwealth v. Cicconi,* 439 Pa.Super. 81, 653 A.2d 40, 42 (1995)("The protection afforded by Section 110 against successive trials or governmental harassment is neutralized if the defendant ... knowingly acquiesces in what appears to be an advantageous separation. Where such occurs, the defendant cannot later raise an objection claiming the statutory protection from multiple trials").

■ ¶ 17 Oxymoronic positions are not precluded by the law, but that does not mean the law must accept being whipsawed by contradictory demands of the parties. Appellant could have sought consolidation or severance, but he cannot have it both ways, waiving consolidation in one county's court, bargaining for silence in another, then complaining of the very result of those pleas in the third county. Section 110 and *McPhail* protect against abuses of unnecessary repetitive prosecutions; they are not arrows in the quiver of procedural gamesmanship. Appellant was not forced to successively "run the gauntlet" or confront the "awesome resources" of Bedford, Cambria or Somerset Counties. He chose to accept disposition of the charges in the jurisdictions where they occurred, and did so with every awareness of his ability to assert a claim for consolidation under *McPhail.* He did so in the face of his motion asserting that very claim, and would have this Court decide the case without the transcripts revealing the facts. We cannot find reason to reward this strategy.

¶ 18 The order denying Peifer's motion to dismiss is affirmed.

¶ 19 Order affirmed.