J-A01028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.F. | |
| Appellant | No. 2847 EDA 2014 |

Appeal from the Judgment of Sentence June 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014898-2013

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED March 14, 2016**

J.F.[1] appeals the judgment of sentence imposed June 10, 2014, in the Philadelphia Court of Common Pleas.  J.F. was sentenced to an aggregate term of seven years' probation following his non-jury conviction of endangering the welfare of a child (EWC), indecent assault, and unlawful contact with a minor,[2] for the sexual assault of his minor granddaughter.  On appeal, J.F. argues:  (1) the trial court erred in finding the victim was competent to testify, and that pressure from her parents did not affect her

---

[*] Former Justice specially assigned to the Superior Court.

[1] We have deleted any reference to the appellant's name to protect the privacy of the victim, who is his granddaughter.

[2] **See** 18 Pa.C.S. §§ 4304, 3126, and 6318, respectively.

credibility, (2) the evidence was insufficient to sustain his convictions, and (3) the trial court ignored J.F.'s character evidence. For the reasons that follow, we affirm.

The evidence presented during J.F.'s non-jury trial was summarized by the trial court as follows:

On September 8, 2013, six year old [victim] received a bath from her mother, [K.S.]. [The victim] was instructed by her mother not to touch her private parts, to which [the victim] responded, "Well why does Pop-pop John touch me here?" Philadelphia Police were notified of the potential child abuse and the victim was interviewed on September 16, 2013. Soon thereafter, [J.F.] was arrested and charged with crimes committed against [the victim], his granddaughter. At trial, [the victim] testified that her grandfather or "Pop-pop" John, identified as [J.F.], touched her vaginal area with his fingers while she was in [his] home, and told her to "keep it a secret."

* * * *

[The victim] testified that she would visit [J.F.'s] house and play in the basement on the monkey bars and the swing which her grandparents had bought for her. She tesitifed that [J.F.] rubbed her "private part" with his finger, inside her underwear, while she was in the basement of [his] home. On several occasions, [J.F.] used his finger to rub outside her vaginal area and would tell her to "keep it a secret." [The victim] promised [J.F.] that she would not tell anyone, since she "didn't want to get in trouble." [The victim] never told her grandmother ([R.F.]) of the rubbing episodes, and [R.F.] was never present in the room with [the victim] and [J.F.] when any inappropriate rubbing occurred.

[The victim] also testified that when she was six, she took a nap in [J.F.'s] bedroom. [J.F.] was present in the bedroom and placed his fingers inside [her] underwear and rubbed her vaginal area repeatedly, until [the victim] turned around to block [J.F.'s] hand. … On cross-examination, [the victim] stated that

[J.F.] also touched her vaginal area in the kitchen of [J.F.'s] residence.

[K.S., the victim's mother,] testified that from the time [the victim] was three years old until she was six years old, [the victim's] grandmother, [R.F.], and her grandfather, [J.F.], would babysit her four days each week. As [K.S.]'s parents were already deceased, she, her husband, and [the victim] became very close to [R.F.] and [J.F.].

\* \* \* \*

[The victim] was taken to the Philadelphia Children's Alliance ("PCA") to be interviewed about [J.F.'s] inappropriate touching. Colleen Getz, a forensic interview specialist with the PCA, testified that she interviewed [the victim] on September 16, 2014. [The victim] stated that [J.F.] had touched her in [his] basement more than one time. Ms. Getz was not provided with the specific dates when [J.F.] engaged in inappropriate touching. [The victim's] entire interview was recorded, and it was played for the court at trial.

[R.F.] testified as a defense witness and told the court that she had regularly watched [the victim] from her infancy until early September of 2013 (at which time [the victim] was six years old). [R.F.] claimed that she never saw [J.F.] touch [the victim] inappropriately, and that she "wouldn't allow" such a thing to happen. She testified that she had no reason to think that anything inappropriate was happening between [J.F.] and [R.S.] in the basement of her home.

[R.F.] testified that the only time that [R.S.] took a nap with [J.F.] in [his] upstairs bedroom was late in August of 2013, approximately two to three weeks before [the victim] first related [J.F.'s] abusive behavior to her mother. [R.F.] stated that on the day during which [J.F.] and [the victim] took a nap in [J.F.'s] bedroom, [R.F.] was present at the bottom of the stairwell located just below [J.F.'s] bedroom door. Although [R.F.] never entered the bedroom and could not see [J.F.] or [the victim], she did hear their conversation. On that day, [J.F.] was not feeling well and desired to take a nap alone in his bedroom. Because [the victim] persisted in trying to play with [J.F.], [R.F.] instructed [her] to go upstairs and take a nap with [J.F.]. As [the victim] followed [J.F.] upstairs, she kept asking

- 3 -

him to play games. After a few minutes of silence, [R.F.] could hear [the victim] encouraging [J.F.] to play games, and both [the victim] and [J.F.] left the bedroom and came downstairs.

[J.F.] testified that both he and his wife had looked after his granddaughter on a routine basis for approximately five years. [J.F.] stated that there were no personal problems between himself and [the victim's] mother. He testified that his relationships with [the victim] and with [her] mother were based on mutual love. [J.F.] stated that he took no part in dressing, undressing, or bathing [the victim], as that was his wife's job. [J.F.] admitted that he had been alone with [the victim] in his home on many occasions, but he strongly denied touching [the victim's] vaginal area.

Trial Court Opinion, 1/8/2015, at 2-5 (internal citations omitted).

J.F.'s case proceeded to a non-jury trial, and, on April 9, 2014, the court found him guilty of the above stated charges.[3] Moreover, the Commonwealth agreed to waive a determination of whether J.F. was a sexually violent predator.[4] On June 10, 2014, J.F. was sentenced to a term of seven years' probation for unlawful contact with minors, and two concurrent terms of five years' probation for EWC and indecent assault.[5] He

_____

[3] J.F. was also charged with aggravated indecent assault, simple assault and corruption of minors. *See* 18 Pa.C.S. §§ 3125(b), 2701(a), and 6301(a)(2), respectively. The two assault charges were disposed of prior to trial, and the court granted a judgment of acquittal after the Commonwealth's case-in-chief on the charge of corruption of minors. *See* N.T., 5/9/2014, at 5.

[4] *See* 42 Pa.C.S. § 9799.24.

[5] The trial court noted the standard guideline range for the most serious charge called for three to 12 months' imprisonment, plus or minus six months. N.T., 6/10/2014, at 4. In sentencing Fritz to a term of probation, the court considered the fact that Fritz was 70 years old, had no prior record, had served in the Navy with distinction, and that his "overall health [was] not good." *Id.* at 16.

filed a timely post-sentence motion, challenging both the sufficiency and weight of the evidence, the victim's competency, and the bills of information. On June 26, 2014, the court denied J.F.'s motion without conducting an evidentiary hearing. This timely appeal followed.[6]

We will address J.F.'s first two issues together. J.F. contends the trial court erred when it found the victim was competent to testify, and that pressure from her parents did not affect either her competency or credibility. Specifically, J.F. emphasizes the victim acknowledged she could not remember "things from when she was young" and was unable to recall when or how many times she took a trip to Disney. J.F.'s Brief at 12. Moreover, J.F. asserts that after the trial court declared the victim competent to testify, it made contradictory statements, conceding the victim "would exaggerate in order to please mom and dad" and stating it could not "rely on the memory of a six year old as to when she was three or four." *Id.* at 12, *citing* N.T., 4/9/2014, at 89-90. J.F. argues "[i]f the minor complainant can't tell the court when something happened then the Court can't tell whether the minor complainant is reliable under its own reasoning." *Id.* at 13. He also claims the trial court did not permit him to cross-examine the victim on her competency. *Id.* at 11.

---

[6] On September 30, 2015, the trial court ordered J.F. to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). J.F. complied with the court's directive, and filed a concise statement on October 21, 2014.

With regard to pressure placed on the victim from her parents, J.F. further contends that based on the trial court's own observations, this pressure was "extremely significant" when determining the victim's credibility, and "can not be simply overlooked and brushed to the side." **Id.** at 14.

"The competency of a witness is presumed, but where the witness is under fourteen years of age, the court must conduct a searching inquiry as to mental capacity." **Commonwealth v. R.P.S.**, 737 A.2d 747, 749 (Pa. Super. 1999). **See also** Pa.R.E. 601. The test for determining the competency of a child witness was first outlined by the Pennsylvania Supreme Court in **Rosche v. McCoy**, 156 A.2d 307 (Pa. 1959):

> There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth.

**Commonwealth v. Delbridge**, 855 A.2d 27, 39 (Pa. 2003), *quoting* **Rosche**, **supra**, 156 A.2d at 310.[7] We review a trial court's determination

_____

[7] Further, Pennsylvania Rule of Evidnece 601 provides, in relevant part:

> A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
>
> (1) is, or was, at any relevant time, incapable of perceiving accurately;
>
> (2) is unable to express himself or herself so as to be understood either directly or through an interpreter;

*(Footnote Continued Next Page)*

of a child witness's competency for an abuse of discretion. **_R.P.S._**, **_supra_**, 737 A.2d at 749.

Here, the trial court determined the victim was competent to testify at trial. The court opined:

> At trial, [J.F.] specifically challenged [the victim's] ability to remember the incidents of rubbing, as she was a child when the rubbing occurred and when she testified at trial on 4/8/2014.[2] [N.T. 4/8/2014, p. 43]. The trial court found that the victim was competent to testify after hearing from her testimony which illustrated her ability to perceive, remember, discuss, and speak truthfully about her life experiences during the time when [J.F.] touched her. [N.T. 4/8/2014, pp. 25-31, 37-42]. The victim testified that she knew the difference between the truth and a lie; she accurately described where she lived and provided directions to [J.F.'s] home (and described the outside thereof); she could remember and describe taking two vacations to Disney World; and she otherwise answered all of the questions presented to her in a coherent and orderly fashion. [N.T. 4/8/2014, pp. 23-24, 25-27, 37-38; N.T. 4/9/2014, p. 35].

_____

> [2] [The victim] was born in August of 2007 and was six years of age at the time she testified at trial in April of 2014. [N.T. 4/8/2014, p. 43].

_____

> On direct and on cross-examination, the Court heard from the victim testimony which established her ability to perceive the abuse suffered at the hands of [J.F.], to recall and communicate about the same in a coherent manner, and to distinguish the

_(Footnote Continued)_ ――――――――――

(3) has an impaired memory; or

(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601(b).

truth from falsehood and understand the duty to speak truthfully. [N.T. 4/8/2014, pp. 46-47, 49-50, 51-52, 54-55, 60-63, 73, 89].

The trial court heard sufficient evidence to find that the victim was competent to testify, and it did not abuse its discretion in allowing the victim's testimony to proceed.

Trial Court Opinion, 1/8/2015, at 8.

Our review of the record reveals ample support for the trial court's ruling. *See* N.T., 4/8/2014, at 21-43. While the victim did testify that she could only remember as far back as when she was five,[8] that admission did not render her incompetent.[9] Rather, the victim's testimony revealed she had the ability to understand questions and communicate intelligent

_____

[8] N.T., 4/8/2014, at 30.

[9] We note the victim's inability to specify exactly when or the number of times the abuse occurred, most likely affected the grading of the offenses. Both EWC and indecent assault are graded as first-degree misdemeanors unless the defendant engaged in a "course of conduct," in which case the grading increases to a third-degree felony. *See* 18 Pa.C.S. §§ 4304(b) and 3126(b)(3).

Just prior to announcing its verdict, the court discussed with counsel what they believed constituted a "course of conduct" so as to increase the grading of the offenses. *See* N.T., 4/9/2014, at 88-89. Thereafter, the court commented that while it did not believe the victim "made any of this story up," it could not "rely on the memory of a six year old as to when she was three or four." *Id.* at 90. The court then proceeded to announce its verdict, finding J.F. guilty of a misdemeanor of a first degree on the charges of EWC and indecent assault. *See id.* at 90-91. *See also* Trial Court Opinion, 1/8/2015, at 12 (stating that "the evidence demonstrated beyond a reasonable doubt that [J.F.] had committed, **at least once**, each crime with which he was charged.") (emphasis supplied).

answers, she had the mental capacity to observe and remember the incidents of abuse, and she understood her duty to tell the truth. *See Delbridge*, *supra*. The fact that the victim could not recall the specific dates when the abuse occurred does not undermine her competency since she was able to recall and describe when J.F. touched her. *See Commonwealth v. McMaster*, 666 A.2d 724, 728 (Pa. Super. 1995) (finding seven-year-old victim competent to testify; "[a]lthough she expressed some general difficulty in recalling events which had occurred [around the time of the abuse], the victim was clear in her testimony that she remembered the three incidents which were the focus of the trial.").

Moreover, J.F.'s claim that the trial court did not permit him to cross-examine the victim on the issue of her competency is specious. *See* N.T., 4/8/2014, at 27-31, 37-41. The court did, however, sustain several objections to J.F.'s cross-examination, in particular, when J.F. asked the victim what her oldest memory was. *See id.* at 31-37. Assuming J.F. is referring to that ruling, we find no relief is warranted. A child's competency may be proven by demonstrating she has "the mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about[.]" *Delbridge*, *supra*, 855 A.2d at 39 (emphasis in original and citation omitted). The Commonwealth need not demonstrate the child has the ability to remember other events that occurred when she was three to four years old.

Further, with respect to J.F.'s contention that pressure from the victim's parents undermined her competency and credibility, we note this claim implicates an allegation of taint.[10]

The Pennsylvania Supreme Court has explained:

An allegation that the witness's memory of the event has been tainted raises a red flag regarding competency, not credibility. Where it can be demonstrated that a witness's memory has been affected so that their recall of events may not be dependable, Pennsylvania law charges the trial court with the responsibility to investigate the legitimacy of such an allegation.

* * * *

In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption.

***Delbridge***, ***supra***, 855 A.2d at 40.

_____

[10] "Taint" is defined as follow:

Taint is the implantation of false memories or the distortion of real memories caused by interview techniques of law enforcement, social service personnel, and other interested adults, that are so unduly suggestive and coercive as to infect the memory of the child, rendering that child incompetent to testify.

***Delbridge***, ***supra***, 855 A.2d at 35.

- 10 -

However, although J.F.'s claim on appeal implies the victim's testimony was "tainted" by her parents, he never raised an allegation of taint at trial. Therefore, any such claim is now waived. Pa.R.A.P. 302(a). Moreover, to the extent J.F. contends the victim's credibility was negatively affected by pressure from her parents, we note that credibility determinations are within the sole province of the fact finder, in this case the trial court, which was "free to believe all, part or none of the evidence." **Commonwealth v. Melvin**, 103 A.3d 1, 40 (Pa. Super. 2014) (quotation omitted). Therefore, no relief is warranted on J.F.'s first two claims.

Next, J.F. contends the evidence is insufficient to sustain his convictions.[11] Our review of such claims is well-settled:

> [W]e must determine whether the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding that every element of the offense was proven beyond a reasonable doubt. The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the [fact finder], in passing upon the weight and

_____

[11] The Commonwealth contends we should find this issue waived because J.F. neglected to include the video recording of the victim's interview with Getz in the certified record. **See** Commonwealth's Brief at 18. We recognize "[i]t is the responsibility of appellant, not this Court, to provide a complete record for review, including ensuring that any necessary transcripts are included in the official record" and the "[f]ailure to provide the necessary materials warrants a finding appellant's claim is waived. **Commonwealth v. Peifer**, 730 A.2d 489, 493 (Pa. Super. 1999), *appeal denied*, 743 A.2d 918 (Pa. 1999). Nevertheless, we find we are able to address the specific claims raised by J.F. without the victim's interview. Accordingly, we decline to find his claims on appeal are waived.

credibility of each witness's testimony, is free to believe all, part, or none of the evidence.

***Commonwealth v. Arrington***, 86 A.3d 831, 840 (Pa. 2014), *cert. denied*, 135 S. Ct. 479 (U.S. 2014).

For our purposes, a person is guilty of unlawful contact with a minor "if he is intentionally in contact with a minor, … for the purpose of engaging in … [a]ny of the offenses enumerated in Chapter 31 (relating to sexual offenses)."[12] 18 Pa.C.S. § 6318(a)(1). The statute defines "[c]ontacts" as "[d]irect or indirect contact or communication by any means, method or device, including contact or communication in person …." 18 Pa.C.S. § 6318(c).

Here, the victim testified that J.F. rubbed her "private part" inside her panties, and told her to "[k]eep it a secret." N.T. 4/8/2014, at 50-52. This testimony is sufficient to support a conviction of unlawful contact with a minor.

J.F. asserts, however, the Commonwealth failed to prove he acted "intentionally." J.F.'s Brief at 15. The trial court found J.F. acted intentionally based upon his statement to the victim to keep his actions a secret. **See** Trial Court Opinion, 1/8/2015, at 10. J.F. argues the court should not have relied upon that single statement to infer his actions were intentional, because the victim admitted he told her that only once, "a long

---

[12] Here, J.F. was also charged with and convicted of indecent assault, which is a Section 31 sexual offense. **See** 18 Pa.C.S. § 3126.

time ago[,]" N.T., 4/8/2014, at 73. He emphasizes, again, the trial court's comment at the conclusion of the trial, that it could not "rely on the memory of a six year old as to when she was three or four." J.F.'s Brief at 16, *citing* N.T. 4/9/2014, at 90. J.F. contends: "Therefore when she says that something happened a long time ago, the Court shouldn't use that testimony to find [J.F.] guilty." J.F.'s Brief at 16.

We disagree. J.F. places too much weight on the six-year-old victim's estimation that J.F. told her to keep his actions a secret "a long time ago." In the life of a six-year old, a "long time ago" could be six months. **See** N.T., 4/9/2014, at 163 (testimony of forensic interview specialist Colleen Getz that "Children don't begin to have a very clear sense of time until at least ten years of age[.]") Further, the trial court, as fact finder, was free to believe or reject the victim's testimony. Indeed, J.F.'s argument focuses more on the weight of the evidence supporting this conviction, rather than the sufficiency. Consequently, we find the evidence was sufficient to support J.F.'s conviction of unlawful contact with a minor.

J.F. was also found guilty of EWC. That crime is defined in Section 4304 of the Crimes Code as follows:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a). With regard to this charge, J.F. similarly argues the evidence did not demonstrate he "knowingly" endangered the victim's

- 13 -

welfare. We need not engage in an extended analysis of this claim, however, since, as discussed above, the fact that J.F. told the victim to keep his actions a secret was sufficient for the court to infer J.F. acted knowingly. Therefore, no relief is warranted.

The final conviction J.F. contests is the charge of indecent assault. "A person is guilty of indecent assault if the person has indecent contact with the complainant, … for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 13 years of age[.]" 18 Pa.C.S. § 3126(a)(7). The Crimes Code defines "indecent conduct" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

J.F. asserts the Commonwealth failed to prove he intentionally touched the victim "for the purpose of arousing or gratifying sexual desire" in either himself or the victim. Indeed, he emphasizes the victim's testimony that she "felt nothing" when he touched her, that he "never removed his clothing, that he only rubbed her above the clothes and that he only used his hand." J.F.'s Brief at 19.

However, J.F. has waived any objection to this conviction because he failed to challenge his indecent assault conviction in his Pa.R.A.P. 1925(b) statement. **See** Statement of Matters Complained of on Appeal, 10/21/2014 (challenging the sufficiency of the evidence only as to Section 6318 and 4304 charges). **See also** Pa.R.A.P. 1925(b)(3)(iv) ("[A]ny issue not

properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived."); ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011) ("Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived[.]"). Therefore, we need not consider this argument on appeal.[13]

In his last issue, J.F. argues the trial court "simply ignored" the character evidence he presented.[14] J.F.'s Brief at 20. At trial, the Commonwealth stipulated to the testimony of three character witnesses, a mother and her two college-age daughters, who would have testified as to J.F.'s reputation in the community "for being peaceful, law-abiding and

---

[13] Nevertheless, we note that, even if J.F.'s issue was preserved, we would conclude he is entitled to no relief. As the trial court explained in its opinion, "[t]he minor victim's testimony was not only highly credible, but sufficient as a matter of law to sustain the verdicts." Trial Court Opinion, 1/8/2015, at 10. Further, the court noted the testimony at trial indicating J.F. "had no legitimate reason to place his hands anywhere near the victim's undergarments[.]" ***Id.*** Accordingly, the evidence supported an inference that J.F. intentionally rubbed the victim's private parts to gratify his own sexual desire.

[14] The Commonwealth asserts that J.F. waived this claim by presenting an underdeveloped argument in his brief. ***See*** Commonwealth's Brief at 24-25. While we agree J.F.'s discussion is sparse, we find we are able to discern the nature of his claim, and address the issue on appeal.

honest."[15]   N.T., 4/9/2014, at 52-53.   J.F. asserts that "in close cases character evidence is enough to establish a reasonable doubt" and, accordingly, "the testimony in this case should have been giving (sic) the weight and consideration afforded it by law."  J.F.'s Brief at 20.

This claim implicates the weight of the evidence supporting J.F.'s conviction.  It is well-settled that when reviewing a weight of the evidence claim,

> an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S. Ct. 1792 (U.S. 2014).[16]

The trial court, which sat as fact finder, addressed J.F.'s weight claim as follows:

> After having the opportunity to observe the victim testify about the abuse she suffered, and hearing the spontaneous manner in which that abuse surfaced, as a verbal statement to the victim's mother, the court is confident that it did not err in assigning credibility to the victim's testimony.  The court did note slight inconsistencies in the victim's testimony, but

---

[15] In his brief, J.F. explains that he and his wife babysat the daughters when they were young.  J.F.'s Brief at 20.

[16] We note that J.F. properly preserved his weight claim in a timely filed post-sentence motion.  **See** Pa.R.Crim.P. 607; Post Trial Motions, 6/20/2014, at ¶ 4b.

determined that these inconsistencies were the result of the victim's trepidation in testifying about traumatic abuse and due to her less than perfect memory, as a child only six years of age, rather than being the product of deceit or fabrication.

The court also noted the potential for the victim to feel pressured by her parents to mold her testimony so that [J.F.] would not "win." The verdicts are appropriate, as the court, in light of all the testimony at trial, **including [J.F.'s] proffered character evidence**, decided that the evidence demonstrated beyond a reasonable doubt that [J.F.] had committed, at least once, each crime with which he was charged. The verdicts were not so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 1/8/2015, at 12 (emphasis supplied and record citations omitted).

We detect no basis upon which to disturb the trial court's ruling. It is evident the court considered J.F.'s character evidence; however, it simply found that evidence did not outweigh the victim's credible testimony about the abuse. Because we find no abuse of discretion on the part of the trial court in making this determination, J.F.'s challenge to the weight of the evidence fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/2016

- 17 -