J-A23029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN H. HAYDEN | : | |
| | : | |
| Appellant | : | No. 1201 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 5, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010092-2019

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: December 16, 2025**

Juan H. Hayden appeals from the judgment of sentence entered following his convictions for third-degree murder and tampering with or fabricating physical evidence.[1] Hayden's appellate claims are waived, and as such, we affirm.

The Commonwealth charged Hayden with criminal homicide and tampering with evidence related to the killing of his girlfriend, who had been stabbed. When police arrived at the scene, they encountered Hayden and took him to the homicide unit for an interview. Hayden eventually confessed to stabbing the victim and hiding the knife behind the couch. He was charged with the above referenced offenses and filed a motion to suppress his statement to police. Motion to Suppress Evidence, filed 11/14/22, at 13.

_____

[1] 18 Pa.C.S.A. §§ 2501(a), 2502(c), and 4910(1), respectively.

At the suppression motion hearing, the Commonwealth called the first responding officer to the scene, Officer Jeremy Howell, and the homicide detective who interviewed Hayden, Detective Don Oesterle. It also admitted into evidence a videorecording with audio of Hayden's interview with police.

Officer Howell responded to the scene along with his two partners, "[f]or a female that had been stabbed" on August 30, 2019, around 9:34 p.m. N.T., Pretrial Motions Hearing, 4/25/23, at 22-23, 24. When he arrived on the scene, he encountered Hayden standing by the doorway and saw a woman lying on the ground. *Id.* at 23. He observed Hayden standing above the victim and noticed that the victim had a towel on her stomach with "a stab wound to her upper abdomen." *Id.* at 23-24. While Officer Howell attended to the victim, he asked Hayden to exit the apartment. *Id.* at 24. Once emergency services arrived, Officer Howell spoke to Hayden. *Id.* at 25. He asked Hayden if he had seen anyone in the area and the last time he spoke with the victim. *Id.* He described Hayden's demeanor as "fairly relaxed" and "clear-headed." *Id.*

While speaking with Hayden, Officer Howell saw a pocketknife in Hayden's pocket. *Id.* at 26. Officer Howell removed the knife and later, his partner, Officer Matt Kaminski, told Officer Howell to detain Hayden. *Id.* After police took the knife from Hayden, Officer Howell said that Hayden became "a little irate with me." *Id.* at 28. Afterward, another officer "noticed the stains of some sort on [Hayden's] shirt and had him taken to the station for the detectives." *Id.* Officer Howell stated that Hayden had been detained as a

witness and for officer safety but was not under arrest at the time. *Id.* at 30. On cross-examination, when asked if he believed Hayden was drunk, Officer Howell explained, "I didn't say that he wasn't drunk or hadn't been drinking. I just didn't think that he was incapacitated." *Id.* at 32. He also agreed that his supervisor reported that Hayden was drunk. *Id.* at 33.

The Commonwealth then called Detective Oesterle. He stated that he read Hayden his *Miranda* rights, and Hayden agreed to speak with him. *Id.* at 41.[2] The Commonwealth admitted the videorecording of the interview. *Id.* at 42. Detective Oesterle testified that he had had many interactions with intoxicated individuals and that "[i]t's very common to interview people that are under the influence of various substances." *Id.* at 39. He explained that in those situations, he has seen "[w]ide ranging" and "[d]ifferent combinations" of intoxication. *Id.* at 40. Detective Oesterle said that he interviewed Hayden and that it lasted seven and a half hours from start to finish. The Commonwealth also provided the court with an "informal transcript" of the interview. *Id.* at 65. The transcript was offered as a "guide," and not for its "word-for-word exactness." *Id.* It was not entered into evidence.

Detective Oesterle stated that some staining and hair were found on Hayden's clothing and had been collected for evidence. *Id.* at 43. During the interview, Hayden did not ask Detective Oesterle for a lawyer or ask him to

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

stop the interview. *Id.* at 42-43. Detective Oesterle said that Hayden had previously been arrested and had various convictions ranging from aggravated assault to aggravated indecent assault. *Id.* at 44-45. During the interview, Hayden took a nap on the floor, used the restroom at various times, drank water, and smoked cigarettes. *Id.* at 44, 47, 48. Detective Oesterle stated that there were several breaks taken during the interview, to "run down the information that Mr. Hayden was giving us to chase down potential other witness leads and anyone who would have knowledge of what happened to [the victim] throughout the night." *Id.* at 49.

Detective Oesterle testified that Hayden told him that "he planned to drink with [the victim] that night" and "bought a liter of rum." *Id.* at 54. Hayden also told Detective Oesterle that he had been drinking that night. *Id.* at 55. When asked if Hayden was drunk, Detective Oesterle stated, "He was not to the point of intoxication where he was not unable to answer our questions concisely, detailed, and continue a conversation with him that would - - He was able to be questioned as a witness in our case." *Id.* Detective Oesterle also explained that during the interview, he did not notice any significant difference in Hayden's behavior or speech. *Id.* at 65. Hayden ultimately confessed to stabbing the victim. *Id.* at 48.

The court denied the suppression motion, and Hayden proceeded with a jury trial before a different judge. *See* Order, filed 7/24/23. During the direct examination of Detective Oesterle, the Commonwealth admitted Hayden's videotaped interrogation with no objection from counsel. *See* N.T., Jury Trial

Transcript Volume I, 10/11/23, at 124; Commonwealth Exhibit 53. It then played various portions of the video. *See Id.* at 126-130, 140-146. Defense counsel questioned Detective Oesterle about various portions of the interview but did not play the video.

During deliberations, the jury asked if it could "get a copy of the unofficial transcripts of both 911 calls made by Hayden and interrogation of Hayden[.]" N.T., 10/16/23, at 498. The court provided the jury with the 911 transcript to take in the jury room but ruled that "as to the interrogation, I think I told you earlier that I cannot provide that to you in the jury room." *Id.* at 500. It stated that the jury could return to the court and "we'll play for you in whole or in part whatever you want. And you will have the transcript to follow along." *Id.* The court asked the Commonwealth how much of the interview it played during trial, and it explained that it played about two to two and a half hours of Hayden's interview. *Id.* at 501. Defense counsel asked if there was "[a]ny chance we could stipulate to them only hear[ing] what was played in court in terms of the interview or - - if they wish to hear the whole entire interview?" *Id.* at 502. The court responded that "I was speaking in the context of what was played in court" and "I'm not going beyond what they heard in court unless they inquire otherwise." *Id.* The court then received two questions from the jury: "Can we receive one minute before and one minute after Juan Hayden was told [the victim] was dead[?]" and, "[C]an we see two minutes before the end of the video?" *Id.* at 503.

The court played the requested portions for the jury and asked, "Did you want to hear the end of the video, to the end of his statement/the end of the video?" *Id.* at 505. The jury responded that it did. *Id.* The requested portion was played for the jury. *Id.* at 506.

Counsel then requested a sidebar during which the following occurred:

> [Defense Counsel]: Your Honor, we didn't show this on direct. This is not in evidence. We didn't show this on direct.
>
> The Court: The entire statement is in evidence.
>
> [Defense Counsel]: But that's what I was asking before. This is the stuff that they didn't get originally.
>
> The Court: It wasn't played in court, but it's a part of what was admitted into evidence. I'm going to ask them if they want to hear more. We can stop when they talk about taking the pants and stuff like that.
>
> [Commonwealth]: Yes, Your Honor.
>
> The Court: Your objection is noted.
>
> [Defense Counsel]: We might have cross-examined the detectives on several parts, but because they didn't play it, we haven't had an opportunity. And I didn't know that. I thought they were offering the snippets like they've done in the past of the interview especially since we haven't had the opportunity.
>
> The Court: Let me ask them while you're here.

*Id.* at 506-507. The sidebar concluded and the court stated, "[T]hat's what was played in court. Is that enough? Does that address your question?" *Id.* at 507-08. The foreperson responded, "[W]e would like to hear what they would say after." *Id.* at 508. Counsel objected, and the court overruled the objection. *See id.*

During recess and before the jury finished watching the remainder of the video, counsel objected to playing the last 45 minutes of the video. She stated that it was unfair to have the jury view portions of the video about which she had not been able to cross-examine detectives and Hayden did not have an opportunity to explain. *Id.* at 510, 511. The Commonwealth responded that "[t]his entire interview was authenticated in its entirety and admitted in its entirety." *Id.* at 511. The court then reconvened with the jury present and played the remainder of the interview, except for the portion showing Hayden's arrest. *Id.* at 513-16.

The jury rendered guilty verdicts for third-degree murder and tampering with evidence. The trial court sentenced Hayden to 15 to 40 years' incarceration for third-degree murder and a concurrent term of one to two years' incarceration for tampering with evidence. Following the grant of his appellate rights *nunc pro tunc*, this timely appeal followed.[3]

Hayden raises the following issues:

1. Whether the trial court abused its discretion and/or erred as a matter of law by denying [Hayden's] Motion to Suppress to exclude [Hayden's] statement to police as the statement was not voluntary based upon the totality of the circumstances?

2. Whether the trial court abused its discretion and/or erred as a matter of law by allowing the jury to watch more of the video during deliberations than was presented during the trial?

---

[3] Following the grant of a Post Conviction Relief Act (PCRA) petition, the court reinstated Hayden's appellate rights from the point of the post-sentencing motion stage. **See** Order of Court, filed 9/24/24.

Hayden's Br. at 6 (answer of trial court omitted).

Hayden challenges the court's denial of his motion to suppress his statements to police. He maintains that his statement to police should have been suppressed because "he was heavily intoxicated" and in the interrogation room for over seven hours before confessing. *Id.* at 15. He argues that his intoxication and the length of time in the interrogation room "shows that he was unable to voluntarily give a statement to police." *Id.* at 17. He states that during his time in the room and before confessing, he slept on the floor, talked to and hit himself, and told police that he had drunk a liter of rum. Hayden further argues that "[t]he manner in which [he] confessed is indicative of the lack of voluntariness." *Id.* He points out that "[h]e maintained his innocence for hours," "[d]etectives were suggesting different situational scenarios that would explain the homicide to [Hayden]," and he did not confess until "the very end[.]" *Id.*

For its part, the Commonwealth maintains that Hayden waived this claim because he failed to ensure that the interrogation video was in the certified record and fails to cite to the record "to support his bald claims of alleged intoxication and improper confinement." Commonwealth's Br. at 9. We agree.

When reviewing the denial of a suppression motion, we only consider "the evidence presented at the suppression hearing[.]" *Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa.Super. 2021) (citation omitted). Upon review of the evidence, we determine "whether the suppression court's factual

findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Id.* (citation omitted).

"Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*). The certified record should include "[t]he original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921. We may only consider the "materials in the certified record when resolving an issue." *Preston*, 904 A.2d at 6. In other words, "if a document is not in the certified record, [we] may not consider it." *Id.* at 7. When an appellant fails to provide the necessary materials to review the appellant's claim, the claim is waived. *See Commonwealth v. Peifer*, 730 A.2d 489, 492 n.3 (Pa.Super. 1999).

Here, Hayden's videorecorded interview is necessary to determine the merits of his claim that he was so intoxicated that his statement was not voluntary. He challenges the denial of his motion to suppress, which requires us to review all evidence presented at the hearing, including the video. The interview is not in the certified record.[4] Therefore, this claim is waived. *Peifer*,

---

[4] We do not even have the "informal transcript" the Commonwealth handed to the court.

730 A.2d at 492 n.3; *see also Commonwealth v. Jones*, 2024 WL 4052974 at *5-6 (Pa.Super. filed September 5, 2024) (unpublished mem.) (finding waiver of Rule 600 claim where appellant did not include transcript from Rule 600 motion hearing in certified record).

Next, Hayden claims that the trial court erred by allowing the jury to watch the portions of his videorecorded statement to police that were not played during trial. He cites *Commonwealth v. Wise*, 444 A.2d 1287, 1290 (Pa.Super. 1982), where this Court held "counsel may reasonably display exhibits which are in evidence and may use such exhibits demonstratively as long as the demonstration is for illusion purposes and does not constitute the creation of new evidence." Hayden maintains that these additional portions of video played for the jury constitute "new evidence" since they were not played at trial. Hayden's Br. at 20 (citing *Wise*, 444 A.2d at 1290).

We review a decision to allow the jury to review materials during deliberations for an abuse of discretion. *See Commonwealth v. Lilliock*, 740 A.2d 237, 243 (Pa.Super. 1999).

Like his first issue, this issue is waived because the videorecording is not in the record. Without it, we cannot assess the impact of the additional portions. Additionally, although Hayden cites to the place in the record where he objected to the court playing the additional parts of the video, Hayden fails to clearly identify the portions of the recording that he contends should not have been played. He merely states that "the Commonwealth only played certain clips from [Hayden's] interview with police during its case. During

deliberations, the jury requested to see more footage than that which was played at trial." Hayden's Br. at 19. Thus, even if the interview was included in the record, this claim would be waived due to Hayden's failure to develop this issue. ***See Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (stating "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived"); Pa.R.A.P. 2119(a) (addressing specific requirements for argument section of appellate brief). No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/16/2025