J-S05035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF MARJORIE VIRGINIA RENNINGER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOHN P. HOLUP AND MARJORIE V. HOLUP | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 588 WDA 2023 |

Appeal from the Order Entered April 24, 2023
In the Court of Common Pleas of Fayette County
Orphans' Court at No. 2621-0236

BEFORE: PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:             **FILED: MARCH 28, 2024**

John P. Holup and Marjorie V. Holup (Appellants) appeal *pro se* from the order which invalidated the July 15, 2005 Last Will and Testament (2005 Will) of Marjorie Virginia Renninger (Decedent). We affirm.

*Facts and Procedural History*

Decedent died in 2006. Appellants are Decedent's daughter (Marjorie), and Marjorie's son/Decedent's grandson (John). Appellee Jonna Hall (Jonna) is Marjorie's daughter and John's sister.

This case involves Jonna's challenge to the 2005 Will "presented for probate [by Appellants] fifteen years after [Decedent's] death[,] and the ownership of a parcel of land [(Disputed Property)], formerly owned by the Decedent, [and] conveyed by [Marjorie], as [Decedent's] heir, [to Jonna,] eight years ago." Trial Court Opinion (TCO), 7/14/23, at 1; **see also** N.T., 6/22/22, at 5 (Jonna's counsel's stating "the issue [is] between brother and

sister over [Disputed Property,] which contains a mobile home and a detached garage").  The trial court described the Disputed Property as "1.9937 acres on which a two car garage is erected and on which a mobile home is placed, known as 1522 Gun Club Road, Uniontown, Fayette County, Pennsylvania." TCO at 1.

In 1999, Decedent executed a Last Will and Testament (1999 Will) which was drafted by Thomas Bowlen, Esquire.  *Id.* at 2.  The 1999 Will named Marjorie as executrix and sole heir, but was never presented for probate.  *Id.* Also in 1999, Decedent conveyed to Marjorie parcels of real estate located adjacent to the Disputed Property.  *Id.*

2014 – Marjorie Deeds the Disputed Property to Jonna

In the summer of 2014, Marjorie [] consulted with … Douglas Sepic[, Esquire,] about various estate planning matters. As a result of these conversations, Attorney Sepic performed certain legal work for Marjorie [] and her husband, … including wills, powers of attorney, and medical powers of attorney.  Though both Marjorie and [her husband] had medical issues prior to consulting with Attorney Sepic, he did not believe and/or observe any behavior that raised concerns about the mental capacity of either Marjorie or [her husband] at that time.  According to Attorney Sepic, Marjorie and [her husband] also discussed the [Disputed Property] with him.  In his view, there was no way to pass clear title to the [Disputed P]roperty without either opening an estate or following the procedure in Probate Estates and Fiduciaries Code, 20 Pa. C.S.[] § 3546, to determine title to a decedent's interest in real estate.  Attorney Sepic testified that they were concerned about the cost of those options relative to the value of the property, as well as the risk of losing a share to the other intestate heirs.  As a result, **Marjorie [] determined that she wanted to convey the interest to her daughter, Jonna [], and did so by deed dated and executed on June 6, 2014**.  Said deed was prepared by Attorney Sepic and executed by the parties in his office.  Attorney Sepic provided for certain

> legal fictions in the recital with the intent of establishing grounds for tacking time for a possible subsequent claim of adverse possession.

Appellee's Brief at 10-11 (emphasis added); *see also* TCO at 2-3.

<u>2021 – Majorie files 2005 Will and Deeds the Disputed Property to John</u>

On February 26, 2021, Marjorie initiated the underlying action by filing the 2005 Will for probate with the Fayette County Register of Wills. The 2005 Will names Marjorie as Decedent's personal representative, and John as the sole beneficiary. The Register of Wills granted testamentary letters, and on March 3, 2021, Majorie executed a deed conveying the Disputed Property to John. The 2005 Will "voided the June 6, 2014 deed" conveying the Disputed Property to Jonna. TCO at 3. Consequently, Jonna petitioned the trial court for a rule to show cause regarding the validity of the 2005 Will. Petition for Rule to Show Cause (Petition), 3/11/21, at 1-11.

Jonna asserted she had "legal standing to contest" the 2005 Will because she was "a potential beneficiary." Petition at ¶ 6. She averred that Marjorie and John were the two witnesses to the 2005 Will, which "was not prepared by an attorney, but instead was a template <u>allegedly</u> completed by the Decedent." *Id.* at ¶¶ 3, 40, 42 (underline in original).

Jonna explained that after the Register of Wills granted Marjorie testamentary letters, Marjorie executed the deed conveying the Disputed Property to John. *Id.* at ¶¶ 8-9. She further averred that John, by correspondence to Jonna dated March 4, 2021, "indicated that he now owned" the Disputed Property. *Id.* at ¶ 24. According to Jonna, the 2005 Will "was

executed as a result of fraud and/or forgery." *Id.* at ¶ 37. She referenced, *inter alia*, John's criminal charges and convictions, and claimed John "forced, threatened, and abused" Marjorie to compel Marjorie's execution of Decedent's 2005 Will for John's "own financial gain." *Id.* at ¶¶ 41-43.

In addition, Jonna averred that in 2015, she had executed a deed transferring the Disputed Property to herself and her husband, Ernie Hall. *Id.* at ¶ 20 (attaching a copy of the deed as Exhibit G). Jonna asserted that she and her husband have paid the taxes and made significant improvements on the Disputed Property. *Id.* at ¶¶ 21-23 (attaching copies of real estate notices and tax receipts as Exhibits H & I).

On March 19, 2021, the trial court issued a rule to show cause. The court explained:

> The parties then engaged in an extensive discovery process. During that process, it was learned that the purported 2005 Will was almost certainly a forgery….
>
> [On June 22, 2022, the trial court held a hearing at which Attorney Sepic testified.] On September 27th, 2022, Michelle Kelley, Esq., then counsel for [Appellants], filed a Motion for Leave to Withdraw Appearance based on her understanding that the office of Joel Sansone, Esq.[,] would be assuming representation of [Appellants]. This [c]ourt granted Attorney Kelley leave to withdraw by Order dated September 29th, 2022.
>
> On October 7th, 2022, this [c]ourt entered a scheduling Order directing that a hearing would be held on November 16th, 2022. At the time scheduled for the hearing on November 16th, 2022, … Deanna Istik[, Esq.,] appeared with her client, Jonna [], but [Appellants] did not appear, nor did any counsel appear or enter an appearance on their behalf. At that time, Attorney Istik represented to the [c]ourt that she had contacted Attorney Sansone's office the previous Friday and they indicated that they would not be representing [Appellants].

At the hearing, Attorney Istik moved for the admission of multiple exhibits, including an affidavit from Javier Marazita, then General Counsel for Electronic Forms, LLC ("eForms") (Exhibit "7" filed on November 17th, 2022). In the affidavit, Marazita states that the 2005 Will used the image of a form that had been developed and copyrighted specifically for eForms. **The earliest production of the form would have been in 2016, therefore it could not have been in circulation at the time the will was purportedly executed in 2005**. Marazita did not provide actual testimony at the November 16th, 2022 hearing[,] as the affidavit was offered and admitted without objection.

On December 2nd, 2022, Elizabeth Tuttle, Esq.[,] of the Law Offices of Joel Sansone[,] entered an appearance for John []. On December 8th, 2022, this court issued an Order on the Rule to Show Cause, wherein it was decreed, among other things, that the 2005 Will was a forgery and that it be stricken from the record. That Order further scheduled a hearing on February 13th, 2023, to address an award of attorneys' fees to Jonna [] and a possible criminal referral for [Appellants] related to the forgery of the [2005 W]ill and statements made in support of the [2005 W]ill to the [c]ourt.

On January 9th, 2023, John [], "*pro se* individually and as Attorney in fact for Marjorie []," filed a Motion for Reconsideration and/or to Vacate Order Dated December 8th, 2022. This [c]ourt then issued an Order dated January 12th, 2023, scheduling a hearing on the Motion for February 14th, 2023, and directing that if reconsideration was determined to be appropriate, the [c]ourt would conduct a hearing on the merits at the same time. On February 6th, 2023, Elizabeth Tuttle, Esq., filed a Consent Motion to Withdraw, averring that John [] had filed the Motion for Reconsideration without her knowledge or advice, and further averring that she and her client had developed irreconcilable differences. The Motion to Withdraw was granted by this [c]ourt by Order dated February 9th, 2023, with a specific notation that the previously scheduled hearing would not be continued.

This [c]ourt held the hearing, as scheduled, on February 14th, 2023. Attorney Istik appeared with her client, Jonna []. [Appellants] appeared without counsel. The docket file showed no evidence that [Appellants] were served with the October 7th, 2022 Order that scheduled the November 16th, 2022 hearing[;] they said they were not notified, and therefore this [c]ourt ruled that reconsideration was appropriate. This [c]ourt then denied

John[]'s motion to continue[,] and proceeded with the hearing on the merits. As this [c]ourt noted at the time, the scheduling order issued on January 12th for the February 14th hearing explicitly stated that if reconsideration was granted[,] the [c]ourt would proceed with the hearing on the merits immediately. Even if [Appellants] did not have notice of the November 16, 2022 hearing, they knew about the evidence proving the [2005] Will was a forgery since before Attorney Kelley withdrew on September 27, 2022, so as of February 14th, they had had more than four months to prepare their response.

At the hearing, John [] objected to the admission of the affidavit of Javier Marazita at the November 16th, 2022 hearing. This [c]ourt agreed and ruled that [Appellants'] opportunity to object and cross-examine would be honored in the hearing that day (2/14/23). Counsel for Jonna [] proffered Marazita's testimony by phone, and there was no objection, so the [c]ourt permitted him to do so. Although John [] objected to the admission of Marazita's affidavit, he made no objection to Marazita['s] testifying.

Despite the [c]ourt order, and despite knowing of the evidence of forgery for at least four months, **neither of the [Appellants] subpoenaed any witnesses for the hearing**. John [] did attempt to present various exhibits, which were objected to as hearsay or as irrelevant. This [c]ourt did not consider the proffered exhibits substantively[,] but received the exhibits so the record could reflect the contents. These exhibits included an unsigned affidavit from Kim Kaufman, [Decedent's] caregiver (purportedly unable to sign due to COVID); an affidavit from Stephanie Matthews; a medical report from Dr. Stacy Sheba; and two pages from a real estate listing agreement. None of those exhibits addressed the critical forgery issue. **Neither of the [Appellants] testified on any of the issues involved despite the opportunity to do so**.

After the hearing, this [c]ourt considered the entire record and entered an Order dated April 24th, 2023, declaring that the 2005 Will was a forgery and striking it from the record, invalidating the deed to John [] dated March 3rd, 2021, and awarding attorneys' fees and costs to Jonna [].

TCO 3-7 (emphasis added).

Appellants filed a timely notice of appeal and court-ordered concise statement pursuant to Pa.R.A.P. 1925(b). They present the following issues for review:

1. Did Jonna [] have standing to file a will contest of the 2005 Will?

2. Should the trial court have recused itself from further proceedings after taking *ex-parte* evidence and argument from Jonna [] at the November 16, 2022 evidentiary hearing?

3. Did the trial court err as a matter of law or abuse its discretion [in] finding there was clear and convincing evidence to grant the will challenge petition?

4. Should the trial court have disqualified Attorney Deanna Istik from representing [Jonna] in the Will contest matter?

Appellants' Brief at 4.

*Discussion*

We review Appellants' issues mindful of the following:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*Est. of A.J.M.*, --- A.3d ----, 2024 PA Super 4 (Pa. Super. filed Jan. 11, 2024) (citation omitted).

- 7 -

Before we consider the merits of Appellants' issues, we address a missing transcript. The record includes transcripts from the hearings held on June 22, 2022 (Attorney Sepic's testimony), and November 16, 2022 (trial court's admitting into evidence the affidavit of Javier Marazita, general counsel for eForms).[1] However, our review is diminished by the absence of the transcript from the February 14, 2023 hearing.

According to "the knowledge of the Appellants, the transcript of the February 14, 2023 hearing was never completed." Appellants' Brief at 9. Upon inquiry by this Court, the trial court prothonotary confirmed they had not received a transcript of the February 14, 2023 hearing. Appellants claim the absence of the transcript constitutes "an obvious break-down" in the court process, and "substantially handicaps … their ability … to proceed with this appeal." *Id.* at 10. They state:

> Appellants note that after making a written request for a copy of the February 14, 2023 hearing transcript and serving it on the Fayette County Court Administrator on the designated form (which is the required procedure), and after making multiple inquiries with that office, Appellants were not advised of a required deposit for transcription nor provided with an invoice to pay for transcription.

***

---

[1] Jonna's counsel summarized the content of Mr. Marazita's affidavit, in which he averred that eForms created the form used for the 2005 Will; the form was not available in 2005; the form became available in 2016 at the earliest; and the 2005 Will is fraudulent because "there's no other place [the form] could have been found, [the form] is copyrighted to this company specifical[ly,] and it is verbatim, the exact same form." N.T., 11/16/22, at 5-6.

> [] Appellants made multiple requests to the Superior Court to postpone the briefing schedule in this matter to afford the trial [c]ourt time to complete the transcript, which the Superior Court granted. However, the continuances were without avail, as the Fayette County Court Administrator failed to follow its procedure in producing the February 14, 2023 transcript after a proper request was made.

*Id.* at 9-10 (italics omitted).

We disagree with Appellants' claim of a breakdown in the court process.

"In general, it is an appellant's burden to ensure that the certified record contains the documents reflecting the facts needed for review."

*Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007).

> With regard to missing transcripts, **the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal**. Pa.R.A.P.1911(a). … When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. [*Commonwealth v.*] *Williams*, 715 A.2d [1101,] 1105 [(Pa. 1998)]. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts. *Id.*
>
> In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, [or other filings,] that well may have been presented to the trial court but never were formally introduced and made part of the certified record. *Commonwealth v. Blystone*, 617 A.2d 778, 783 n.4 (Pa. Super. 1992).

*Commonwealth v. Preston*, 904 A.2d 1, 7-8 (Pa. Super. 2006) (*en banc*) (emphasis added).

> Rule 1911 provides:
>
> **(a) General rule.**  The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 4001 *et seq.* of the Pennsylvania Rules of Judicial Administration.
>
> ***
>
> **(c) Form.**  The request for transcript may be endorsed on, incorporated into, or attached to the notice of appeal or other document and shall be in substantially the following form:
>
> **[Caption]**
>
> A (notice of appeal) (petition for review) (petition for specialized review) (other appellate paper, as appropriate) having been filed in this matter, the official court reporter is hereby requested to produce, certify and file the transcript in this matter in conformity with Rule 1922 of the Pennsylvania Rules of Appellate Procedure.
>
> Signature
>
> **(d) Effect of failure to comply.**  If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.

Pa.R.A.P. 1911.

The Pennsylvania Supreme Court has instructed that when an appellant "faults the trial court," and "suggests that there is some obligation to 'provide' a 'complete' record in the abstract, that obviously is not the case.  Rather, the appellant has a duty to frame what is needed."  *Commonwealth v. Lesko*, 15 A.3d 345, 410 (Pa. 2011).  Our High Court explained:

The plain terms of the Rules contemplate that **the parties, who are in the best position to know what they actually need for appeal, are responsible to take affirmative actions to secure transcripts and other parts of the record**. *See, e.g.*, ***Commonwealth v. Steward***, 775 A.2d 819, 833 (Pa. Super. 2001) (noting that it was not the responsibility of the trial court to order the notes of transcript of defense counsel's closing as Rule 1911 "makes it abundantly plain that it is the responsibility of the [a]ppellant to order all transcripts necessary to the disposition of his appeal."); ***Commonwealth v. Peifer***, 730 A.2d 489, 492 n.3 (Pa. Super. 1999) (explaining that it is the responsibility of the appellant and not the court to provide a complete record for review, including any necessary transcripts). [An appellant] cannot fault the trial court for his own failures. Instead, **it is only when an appellant can show that a request was made and erroneously denied, which is not the case herein, that such a claim would have merit**. *See* ***Commonwealth v. Jones***, 912 A.2d 268, 284–85 (Pa. 2006).

\*\*\*

Moreover, even when notes of testimony are properly ordered, the absence of notes does not generate some instantaneous, meritorious claim for relief. Instead, if the initially missing notes matter, it becomes a circumstance the appellant or his counsel needs to respond to by, for example, ordering notes counsel failed to order earlier; or seeking an order of court to have ordered notes promptly transcribed, or otherwise made available; or, where notes cannot be secured, to take steps to have an equivalent picture of the proceeding generated. *See* Pa.R.A.P. 1911(a); Pa.R.A.P. 1923 (statement in the absence of transcript); Pa.R.A.P. 1924 (agreed upon statement of the record).

***Id.*** at 410-11.

There is no documentation of Appellants' ordering the February 14, 2023 transcript as set forth in Pa.R.A.P. 1911. The certificate of service attached to Appellants' notice of appeal includes "The Official Court Reporter of President Judge Steve Leskinian," and lists the same address, 61 E. Main Street, which Appellants list for Judge Leskinian and "the Administrative Office

of Fayette County Courts." *See* Notice of Appeal, 5/22/23 (unnumbered attachment). The record otherwise lacks any reference, request or order to support Appellants' claim that they ordered the February 14, 2023 transcript.

Appellants likewise failed to provide documentation in this Court. In their first of two requests for extension of time to file their brief, Appellants state, without further explanation, that the "hearing transcript for the final hearing, upon which the crux of the trial court's decision was based, has not yet been transcribed." Application for Extension of Time, 8/28/23, at 2. In their second request, Appellants state:

> [] The Official Court Reporter for the Court of Common Pleas of Fayette County has not completed the reproduction of the transcript of the final court proceedings from which multiple issues arise relative to this appeal.
>
> [] Having a completed transcript of proceedings is essential to the citations to facts within the body of the brief in order to support the claims of the Appellants.

Second Application for Extension of Time, 9/26/23, at 2.

This Court granted both requests for extension of time. Appellants subsequently filed their brief containing the above-quoted discussion about the missing transcript. Appellants' Brief at 9-10. As noted, Appellants claim "the continuances were without avail, as the Fayette County Court Administrator failed to follow its procedure in producing the February 14, 2023 transcript after a proper request was made." *Id.* at 10 (italics omitted). Appellants disregard their responsibility to procure the transcript. Again, it is Appellants' responsibility "to supply this Court with a *complete* record for

purposes of review." **Smith v. Smith**, 637 A.2d 622, 623 (Pa. Super. 1993) (italics in original, citations omitted). Appellants' "failure to ensure that the record is complete risks waiver of appellate issues that are dependent on the missing items." **Erie Ins. Exch. v. Moore**, 175 A.3d 999, 1006-07 (Pa. Super. 2017), *affirmed*, 228 A.3d 258 (Pa. 2020).[2]

Appellants state that the absence of the February 14, 2023 transcript impacts "their ability … to proceed with this appeal." Appellants' Brief at 10. The missing transcript also impacts appellate review. The record is sufficient for this Court to review Appellants' first issue regarding Jonna's standing. However, without the February 14, 2023 transcript, we are unable to review Appellants' remaining three issues. As explained below, we are constrained to find waiver of those three issues. **See Smith**, 637 A.2d at 623-24 (stating that the failure "to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue(s) be examined"); **Preston**, 904 A.2d at 7 (finding that an issue that cannot be resolved without reference to the missing transcripts is waived for purposes of appeal).

---

[2] In addition, Appellants' "*pro se* status confers no special benefit." **Jordan v. Pennsylvania State Univ.**, 276 A.3d 751, 761 (Pa. Super. 2022) (citations omitted). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **Id.** "[I]t is well-settled law that 'a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court.'" **Id.** at 762 n.3.

Trial Court Recusal

Appellants assert the trial court erred by failing to recuse from the case after conducting the November 16, 2022 hearing in Appellants' absence. Appellants maintain that the trial court's "'do-over' of the November 16th hearing on February 14 2023[,] with all parties present[,] in no way 'cures' the appearance that the trial [c]ourt is no longer objective or impartial or has not done [*sic*] engaged in some impropriety." Appellants' Brief at 20.

Appellants claim they preserved this issue at the February 14, 2023 hearing. ***Id.*** at 4. We disagree. Without the transcript, there is no evidence this issue was preserved. The record does not contain a motion to recuse, and the docket does not show that Appellants filed a recusal motion. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." ***Bowman v. Rand Spear & Associates, P.C.***, 234 A.3d 848, 862 (Pa. Super. 2020) (citation omitted). Our Supreme Court has stated:

> In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

*Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017). Accordingly, Appellants have waived their issue regarding recusal.[3]

Evidence to Invalidate the 2005 Will

Appellants also argue the trial court "erred as a matter of law and abused its discretion in finding that there was clear and convincing evidence to grant the will challenge petition." Appellants' Brief at 4, 21; *id.* at 24 (specifying that the trial court erred by concluding that "evidence existed to find that the [2005] Will was a forgery"). Appellants emphasize that the trial court "relies heavily on the telephone testimony of Javier Marazita, General Counsel for eForms, a company that provides estate planning documents to the public, who testified that the 2005 Will was drafted on an eForms template that was created in 2016 and was not in circulation in 2005." *Id.* at 22 (citing TCO at 4, 5, 8, 9, 10). Appellants argue:

> First, absent from the 2005 Will was a[n] eForms logo which appears on the eForms version of the template. Marazita provided no explanation for the absence of the logo. Secondly, Marazita claimed that the eForms will template was "copyrighted" but provided no evidence of the same. Third, Marazita could only testify that the 2005 Will appeared to be on the same form produced by eForms. This does not rule out the fact that it could have been produced on any form identical to eForms. Fourth, Marazita did not provide any information on how eForms creates their templates or whether their electronic templates which can

---

[3] This issue would likely lack merit even if preserved. In response to Appellants' Pa.R.A.P. 1925(b) statement, the trial court opined that Appellants "produced no evidence that would call into doubt th[e trial c]ourt's ability to preside impartially." TCO at 15. The court stated it "reviewed the entire matter and has [no] conflict of interest, and no reason to rule on the basis of partiality, bias, or ill-will." *Id.*

- 15 -

be downloaded from their website existed in any other format prior to 2016. Fifth, Marazita did not know if the [D]ecedent signed the 2005 Will or when the 2005 Will was signed.

*Id.* at 22-23 (citing 2005 Will).

It is undisputed that Mr. Marazita testified at the February 14, 2023 hearing. *See id.* at 8; TCO at 6. We cannot review Mr. Marazita's testimony because the hearing transcript is not in the record. Thus, "there is no basis on which relief could be granted." *Preston*, 904 A.2d at 7. Appellants' "claim that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." *Id.* (citation omitted).[4]

_____

[4] Although we cannot review Mr. Marazita's testimony, the evidence in the record supports the trial court's findings. For example, Attorney Sepic testified that he met with Majorie and her husband, as well as John and Jonna, in 2014. N.T., 6/22/22, at 17. Attorney Sepic "had multiple meetings with the four members of the family." *Id.* at 34. At that time, the Disputed Property was still titled in Decedent's name. *Id.* at 37. Attorney Sepic testified:

> There was basically a dispute in my office between Jonna and [John] over this parcel in particular[; John] claimed that the [Disputed P]roperty was his or should be his and was left to him by [Decedent], and Jonna disputed that.

*Id.* at 36. According to Attorney Sepic, Marjorie subsequently asked him to prepare a deed granting the Disputed Property to Jonna. *Id.* at 82. On June 6, 2014, Attorney Sepic prepared the deed conveying the Disputed Property from Marjorie to Jonna. *Id.* at 45, 47, 82. He testified that in 2014, he did not know about the 2005 Will, and "no will [was] ever presented to" him. *Id.* at 44; 54. Attorney Sepic had no further involvement with the Disputed Property until 2021, when Appellants contacted him about probating the 2005 Will. *Id.* at 61. Attorney Sepic stated, "that was the first time I was made aware of it." *Id.* at 62. He repeated: "As of 2014, when I prepared the deed from [Marjorie] to Jonna [], I didn't see a will." *Id.* at 75.

Disqualification of Counsel

Appellants argue the trial court "should have disqualified [Jonna's counsel,] Attorney Deanna Istik[,] from representing [Jonna] in the Will contest matter." Appellants' Brief at 4. Appellants claim they preserved this issue at the February 14, 2023 hearing. *Id.* They state:

> At the February 14, 2023 hearing, [] John [] objected to Attorney Istik's representation of [] Jonna [] on the basis that she prepared a deed from Jonna Hall to Jonna Hall and her husband, creating an entireties estate. [] John [] further objected because Attorney Istik purportedly claimed to the Fayette County Tax Claim Bureau that she probated a will for the [D]ecedent when the same was purportedly false, as there is no evidence of any other will being probated for the [D]ecedent at any time other than the 2005 Will.
>
> Appellants assert that Attorney Istik was a necessary witness under Rule 3.7 of the Pennsylvania Rules of Professional Conduct, on the issue of the basis for the purportedly false representations made to the Tax Claim Bureau and the creation of the subsequent deed.

*Id.* at 24.[5]

---

[5] Appellants additionally claim:

> There is also[] after-discovered evidence that Attorney Istik's husband[,] a Pennsylvania State Trooper then stationed at the Uniontown Barracks, conducted an investigation into criminal allegations made by Appellants [] in 2016 against [] Jonna [] and her then attorney, Deanna Istik (who was the purported fiancé of Trooper Istik at the time)[,] relating [*sic*] the property dispute allegations which are intertwined with this action, and that Trooper Istik purportedly failed to take the appropriate action on the complaint.

Appellants' Brief at 25. In conducting review, this Court "rel[ies] only on facts and documents in the certified record." ***Commonwealth v. Rush***, 959 A.2d
*(Footnote Continued Next Page)*

Because the February 14, 2023 transcript is not in the record, we are unable to confirm Appellants' preservation of the issue before the trial court. *Preston*, 904 A.2d at 7. However, even if preserved, we would find waiver because Appellants have not substantiated or developed their argument. *See* Pa.R.A.P. 2119(b) (requiring that the argument include "discussion and citation of authorities as are deemed pertinent"); *see also In re Est. of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority."). Consequently, Appellants' undeveloped argument and "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal." *See id.*[6]

Standing

Finally, we address the merits of Appellants' issue challenging Jonna's standing. Appellants claim Jonna lacked standing to contest the 2005 Will

---

945, 949 (Pa. Super. 2008) (citation omitted). "This Court does not rely on items *dehors* the record, such as assertions in an appellate brief." *Id.*

[6] Even if not waived, this issue appears meritless. The trial court indicates that John objected to Attorney Istik's representation of Jonna at the February 14, 2023 hearing. TCO at 12. However, the trial court found John "offered no details in support of his objection, and the record does not reflect what he is referring to." *Id.* The trial court states, "although John [] claims [Attorney] Istik would be a necessary witness, he did not call her as a witness during the hearing." *Id.* at 13. Moreover, John "presented no evidence of any unethical behavior that would support disqualification[.]" *Id.* at 13-14.

- 18 -

because she was not "entitled to inherit from the Decedent's estate."

Appellants' Brief at 14. Appellants argue:

> There is no evidence that Appellee, Jonna [], is identified as a beneficiary under either the 2005 Will or the 1999 Will of which she purportedly had possession. While in 2014 she may have gained some potential interest in the [Disputed Property,] at the time of the probate of the 2005 Will due to her mother, Marjorie [], deeding her interest in the [Disputed Property] to Jonna [] at that time[,] Jonna [] did not have any interest in the [Disputed Property] under either the 2005 Will or the purported 1999 Will at the time of [D]ecedent's death.
>
> The case law is clear that in order to have standing to contest a Will[, Jonna] must have been entitled [to] participate in the [D]ecedent's estate.

*Id.* at 13-14 (citing *In re Luongo*, 823 A.2d 942 (Pa. Super. 2003)).

Jonna and the trial court also cite *In re Luongo*. *See* Appellee's Brief at 22; TCO at 7. Jonna argues the "law regarding standing is very clear," and provides her with standing because of her pecuniary interest in the Disputed Property. Appellee's Brief at 19. Jonna observes that if the 2005 Will "was found to be valid, then her interests and rights regarding the [Disputed Property] would ultimately be affected." *Id.* We agree.

> This Court in *In re Luongo* explained:

> As a general rule, a party must have standing to contest probate of a decedent's will. In will contests, the right to an appeal is statutory as is the designation of the parties on whom the right is conferred, and is defined at Section 908 of the [Probate], Estates and Fiduciaries Code [(PEF Code)].

*In re Luongo*, 823 A.2d at 953 (citation omitted).

The PEF Code provides that any "party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register,

or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court[.]" 20 Pa.C.S. § 908(a). "In essence, a party has the requisite standing to contest a will when that party is **aggrieved** by a judgment, decree or order of the register, in the sense that some pecuniary **interest** of that party has been 'injuriously affected.'" ***In re Est. of Luongo***, ***supra*** (emphasis in original, citation omitted).

Jonna explains:

> While [she] was not a direct beneficiary of either of the Wills purported to be in existence, [Jonna] does have a pecuniary interest in whether the [2005 Will] is entered into probate or declared a forgery. The record is clear that Jonna [] is the granddaughter of the [D]ecedent []. [Jonna] is not the direct beneficiary under either Will, nor would she take under intestate succession, as her mother, Marjorie [], is still alive and a party to this matter. However, **Marjorie [] [previously] conveyed her interest in the [same Disputed P]roperty, the only item to be conveyed and/or awarded under the [2005 Will], to her daughter, Jonna [], on June 6, 2014**.

Appellee's Brief at 22-23 (emphasis added). For nearly a decade, Jonna and her husband have held title to the Disputed Property. They have paid the property taxes, made improvements, and eventually rented the Disputed Property. ***See*** Petition at ¶¶ 21-23; N.T., 6/22/22, at 8. The trial court concluded:

> Jonna [] clearly has a pecuniary interest in whether the 2005 Will is entered into probate or declared a forgery. Marjorie [] conveyed her entire interest in the [Disputed] Property to Jonna [] via the 2014 Deed. However, a grantor cannot convey title to property greater than what they own. ***Starling v. Lake Meade Property Owners Association, Inc.***, 162 A.3d 327, 338 (Pa. 2017). There are at least three possible scenarios under which the [D]ecedent's estate might be administered, each of which results in a different interest being conveyed to Jonna [] through

- 20 -

the 2014 Deed.  If the 2005 Will is probated and valid, Jonna [] would not have received any interest in the [D]isputed Property through the 2014 Deed.  If the 2005 Will is invalidated, then at the time of the 2014 Deed, Marjorie [] owned, and therefore conveyed, either a fee simple interest in the [Disputed P]roperty (as the sole beneficiary of the 1999 Will) or a fractional interest (under intestate succession, as Marjorie [] has other siblings).  Thus, Jonna [] not only has an interest in the 2005 Will contest, she also has a pecuniary interest as to whether the estate should be administered under the 1999 Will or by intestate succession if the 2005 Will is invalidated.

TCO at 7-8.  We discern no error, as the record and law support the determination that Jonna had standing to contest the 2005 Will.

In sum, we conclude that Appellants' standing issue lacks merit, and we find waiver as to Appellants' remaining three issues.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/28/2024

- 21 -